The People *v.* Burroughs.

SUPREME COURT. Albany General Term, February, 1851, *Harris, Parker* and *Watson,* Justices.

## THE PEOPLE *vs.* DANIEL BURROUGHS.

Form of an indictment for perjury in falsely swearing that usury was taken in discounting a promissory note.

Where it does not appear on the face of the record, by the statement of the issue and evidence in the indictment, that the matter alleged to be false is material, it is sufficient to aver in the indictment that the matter, in relation to which perjury is assigned, became and was material upon the trial.

Where in a suit brought by a bank on a promissory note, the defendant had testified as a witness in behalf of the endorser, that F., who at that time was president of the bank, had taken usury in discounting the note, it was held, on a trial of the defendant for perjury in giving such testimony, that it was not necessary to set forth in the indictment that F. was acting in the transaction as an officer of said bank, or in what particular way he was connected with the transaction, but that it was sufficient in the indictment to allege that it became a material matter and question, &c., whether the said F. discounted said note, and whether he took usury in discounting it, and then to set forth particularly the testimony of the defendant on those points and the facts as they actually existed, which were inconsistent with such testimony, with the usual allegations of falsity and corrupt intent.

An averment in an indictment that the defendant was sworn as a witness between the bank and J. B., is sustained by proof that the defendant was sworn in a suit brought by the bank on a promissory note against J. B., the endorser, and S. McF. and the defendant, as joint makers, the evidence of the defendant in such case being only available in behalf of the endorser.

This case was brought up by certiorari from the Rensselaer Oyer and Terminer. The indictment there found was as follows:

*County of Rensselaer, ss.* The jurors for the people of the state of New York, in and for the body of the county of Rensselaer, to wit: Jason Burrell, &c., then and there being sworn and charged to inquire for the said people for the body of the county of Rensselaer aforesaid, upon their oath present that heretofore, to wit, on the twenty-fourth day of January, in the year of our Lord one thousand eight hundred and fifty, at the city of Troy, in the county of Rensselaer aforesaid, before the honorable William B. Wright, one of the justices of the supreme court of the state of New York, at the term of said supreme court held by and before the said William B. Wright (so being one of the justices aforesaid), in and for the said county of Rensselaer, on the third Monday of January in the year last aforesaid, and continued to and upon the said twenty-fourth day of January, in the year last aforesaid, a certain action in said supreme court between the president, directors and company of the Bank of Lansingburgh, plaintiffs, and Daniel Burroughs, Samuel McFarland and John Burroughs, defendants, upon a certain promissory note, in the words and figures following, to wit:

CAMBRIDGE, Jan. 22, 1849.

Twenty-five days from date we promise to pay to the order of John Burroughs two thousand dollars at the Lansingburgh Bank for value received.

Daniel Burroughs,
Samuel McFarland,

and endorsed: John Burroughs.

And certain issues of fact in the said action came on to be tried in due form of law, and were then and there tried by a jury of the county in that behalf duly sworn and taken between the parties aforesaid to said action, upon which said trial Daniel Burroughs late of the town of Cambridge and in the county of Washington, laborer, then and there to wit, on the said twenty-fourth day of January, in the year of our Lord one thousand eight hundred and fifty, appeared as a witness for and in behalf of the said John Burroughs, one of the said defendants in said action, and was then and there duly sworn and

*The People v. Burroughs.*

took his corporal oath to and before the said William B. Wright, justice as aforesaid, that the evidence which he, the said Daniel Burroughs, should give to the said court and to the said jury, so sworn as aforesaid, touching the matters then and there in question, between the said, the president, directors and company of the Bank of Lansingburgh and the said John Burroughs, should be the truth, the whole truth and nothing but the truth, the said William B. Wright then and there being one of the justices of the supreme court, and then and there having full power and authority to hold said court at the time and place aforesaid, and then and there having jurisdiction of the said action and the issues aforesaid, and having power and authority then and there to try the same, and then and there having full and sufficient power and authority to administer the said oath to the said Daniel Burroughs in that behalf and so as aforesaid to swear the said Daniel Burroughs.

And the jurors first aforesaid, upon their oath aforesaid, do further present that at and upon the said trial of the said action and of the said issues therein, it then and there became and was a material matter and question between the said, the president, directors and company of the Bank of Lansingburgh, plaintiffs, and the said John Burroughs, one of said defendants in said action (the said John Burroughs being complained against in said action by said plaintiffs as endorser of said promissory note upon which said action was brought as aforesaid), whether John S. Fake discounted the said note above recited, and upon which said action was brought, and also whether the said Daniel Burroughs paid to the said John S. Fake, at the time of the discounting of said note above recited and upon which said action was brought, any sum of money over and above the lawful interest and discount upon said note last mentioned, and also whether the said John S. Fake discounted the note for the renewal of which the said note above recited and upon which said action was brought was given; and also whether the said Daniel Burroughs paid to the said John S. Fake, at the time of the discounting of the said note for the renewal of which the said note above recited and upon

which said action was brought was given, any sum of money over and above the lawful interest and discount upon the said note for the renewal of which the said note above recited and upon which said action was brought was given.

And the jurors first aforesaid, upon their oath aforesaid, do further present that the said Daniel Burroughs, with force and arms then and there, to wit: On the said twenty-fourth day of January, in the year aforesaid, and at the city of Troy aforesaid, being so sworn as aforesaid, and not having the fear of God before his eyes nor regarding the laws of the state of New York, but being moved and seduced by the instigation of the devil and contriving and intending to prevent the due course of law and justice and unjustly to aggrieve the said, the president, directors and company of the Bank of Lansingburgh, plaintiffs, as aforesaid, and to cause a decision to be made on the trial aforesaid against the said, the president, directors and company of the Bank of Lansingburgh, and in favor of the said John Burroughs, one of said defendants, and thereby to subject the said, the president, directors and company of the Bank of Lansingburgh to the payment of sundry heavy costs, charges and expenses, then and there on the said trial, upon his oath aforesaid, falsely, corruptly, knowingly, willfully, maliciously and feloniously, before the said court and before said jurors so sworn as aforesaid, did depose, testify and swear, amongst other things, in substance and to the effect following, that is to say: That John S. Fake [the said John S. Fake meaning] discounted this note [meaning the said note above recited and upon which said action was brought], and that he [the said Daniel Burroughs meaning] paid him [the said John S. Fake meaning] the interest on this note and seven dollars [meaning at the time of the discounting of said note above recited and upon which said action was brought the sum of seven dollars over and above the lawful interest and discount upon said note last named] and that John S. Fake [the said John S. Fake meaning] discounted the note for which this was a renewal [meaning discounted the note for the renewal of which the said note above recited and upon which said action was brought was given], and that he

The People *v*. Burroughs.

[the said Daniel Burroughs meaning] paid him [the said John S. Fake meaning] .ten dollars over and above the interest [meaning at the time of the discounting of said note for the renewal of which the said note above recited and upon which said action was brought was given] the sum of ten dollars over ʼnd above the lawful interest and discount upon the said note, fʼr the renewal of which the said note above recited and upon which said action was brought was given.    Whereas, in truth and in fact, the said John S. Fake did not discount the said note above recited, and upon which said action was brought; and whereas, in truth and in fact, the said Daniel Burroughs did not pay to the said John S. Fake, at the time of the discounting of the said note · above recited and upon which said action was brought, or at any other time, the sum of seven dollars or any other sum cʼ ¯ and above the lawful interest and discount upon said note ıst named; and whereas, in truth and in fact, the said John S. Fake did not discount the note for the renewal of which the said note above recited and upon which said action was brought was given; and whereas, in truth and in fact, the said Daniel Burroughs did not pay to the said John S. Fake, at the time of the discounting of said note for the renewal of which the said note above recited, and upon which ₚaid action was brought was given or at any other time, the sum of ten dollars or any other sum over and above the lawful interest and discount upon the said note for the renewal of which the said note above recited and upon which said action was brought was given.

And so the jurors first aforesaid, upon their oath aforesaid, do say: That the said Daniel Burroughs at and upon the said trial of the said action and of the said issues, on the said twenty-fourth day of January, in the year of our Lord one thousand eight hundred and fifty, at the said city of Troy, in the county of Rensselaer aforesaid, before the said William B. Wright, one of the justices of the supreme court of the state of New York, then and there holding a term of the said supreme court [he the said William B. Wright, so as aforesaid, having full and sufficient poʼwer and authority to hold such court and

to administer the said oath to the said Daniel Burroughs in that hehalf] by his own proper act and consent, and of his own most wicked and corrupt mind in manner and form aforesaid, falsely, wickedly, willfully, corruptly, maliciously and feloniously did commit willful and corrupt perjury, to the great displeasure of Almighty God, in contempt of the people of the state of New York and their laws, to the manifest perversion of justice, to the evil and pernicious example of all others in the like case offending, against the form of the statute in such case made and provided and against the peace of the people of the state of New York and their dignity.

There was a second count in the indictment.

The defendant pleaded not guilty, and the traverse came on to be tried on the 30th day of January, 1851, at a court of Oyer and Terminer, in the county of Rensselaer, before Mr. Justice Harris and the justices of the sessions.

The district attorney first offered in evidence a record of a judgment rendered in the supreme court in favor of the president, directors and company of the Bank of Lansingburgh, against Daniel Burroughs, Samuel M'Farland and John Burroughs. The plaintiffs alleged in the complaint that two of the defendants, Daniel Burroughs and Samuel M'Farland, on the 22d day of January, 1849, at Cambridge, in the county of Washington, and state of New York, by their promissory note in writing, dated on the day last mentioned, for value received, promised to pay to the defendant, John Burroughs or order, the sum of two thousand dollars, at the Bank of Lansingburgh, twenty-five days from the date thereof, and that the defendant, John Burroughs, afterwards endorsed the said note, and that the same was thereupon transferred to the plaintiffs. It was further alleged in the complaint that payment of the note was duly demanded at maturity, and that it was protested for nonpayment, and notice thereof duly given to the endorser, and that the note had not been paid, &c. &c.

Daniel Burroughs and Samuel McFarland answered together setting up the defence of usury. John Burroughs answered separately setting up a like defence. To both these answers

The People *v.* Burroughs.

replies were put in. It appeared by the record that on a trial at the circuit the plaintiff recovered the amount of the note.

To the introduction of this record in evidence, the defendant by his counsel objected on the ground, that the said record did not present an issue to which the allegation in the indictment if sustained, could be material, and also that the said record did not show a trial, and if it did, it fixed it at another time than that laid in the said indictment. The court overruled the objection and admitted the evidence to which the defendant by his counsel excepted. The district attorney then called as a witness Harvy Betts who testified as follows, to wit:

I was deputy clerk in January, 1850; I was present at the January term of this court, 1850; Judge Wright held the term; I know defendant by sight; he was sworn as a witness on that occasion in a suit between the president, directors and company of the Bank of Lansingburgh and Daniel Burroughs and others defendants.

The district attorney then called as a witness, Marcus L. Filley who testified as follows, to wit:

I was present at the trial of the cause referred to in the record, and took minutes of the evidence therein. The defendant testified on that trial that he negotiated that note with John S. Fake; he said I brought the note to Fake at that time; I told him I wanted to exchange that note, to let him, Fake, have that note and take out the other, and that, at that time I paid John S. Fake seven dollars over and above the legal interest. He, defendant, testified farther than he procured the discounting of the note for which this note was given in the renewal with John S. Fake, and that he, defendant, paid John S. Fake at that time ten dollars over and above the legal interest.

The district attorney then called as a witness Abram B. Olin who testified as follows, to wit:

I was counsel for the plaintiffs in a suit spoken of by Filley, and kept minutes of the evidence. He, defendant, testified on that trial when called as a witness, in substance, that John S.

VOL. I. 28

The People *v.* Burroughs.

Fake discounted this note and that he paid him seven dollars, over and above the legal interest; he also testified that the note for which this note was given in renewal, was discounted on his application by John S. Fake, and that he, defendant, agreed to pay, and did pay to John S. Fake ten dollars over and above the legal interest for discounting that note.

John S. Fake was then called as a witness for the people, and testified in substance as follows, to wit: I did not discount the note referred to, and the defendant did not pay me any sum over and above the legal interest, I do not know whether this note was given in renewal of another note or not. I do not recollect whether I discounted the note for which this was given in renewal. I never took any money of Burroughs over and above the interest, on any paper whatever.

Alpheus Warren on the part of the people, testified in substance as follows: I know defendant, I took this note to the bank for defendant, in January, 1849, defendant let me have the money to pay the discount thereon, I paid it to the Bank of Lansingburgh and returned the balance of the money and the old note to the defendant. Defendant did not pay me any sum over and above the legal interest thereon.

Pliny Corbin was called on the part of the people, and testified in substance as follows: The note referred to was discounted by the Bank of Lansingburgh, on the 25th day of January, 1849, it was brought to the bank by Mr. Warren. Mr. Alexander Walsh made out the discount on said note, and Warren handed me some money and Walsh took out the discount on said note, and returned back the balance of the money, and I handed it to Warren. Defendant had some 17 or 20 notes discounted and renewed at the Bank of Lansingburgh from October 1848, to February 1849 for $2000 each.

Alexander Walsh on the part of the people, testified in substance as follows: I computed the discount on this note. I am teller of the Bank of Lansingburgh. I took out the discount and expense of protest, and retained no more, and handed the balance of the money and old note back to Warren.

There was testimony, also, introduced on the part of the

The People *v*. Burroughs.

defendant corroborating the testimony of the said defendant. I was in the former suit. It was admitted on the trial of the indictment that John S. Fake was, at the time of the alleged discounting of the note, president of the Bank of Lansingburgh; and that it was so proved on the trial upon the note.

After closing the testimony, the defendant's counsel raised the following points of law touching the said indictment, and the matters therein charged against the said Daniel Burroughs, and asked the court to direct a verdict of acquittal, and also asked the court to charge the jury:

1st. That said indictment charged no offence, and alleged no issue that could have been material on the trial of the former suit.

2d. Any charge as laid in the indictment that Fake took usury did not even conduce to prove the issue, that the bank took usury on that note which was the only issue in that suit.

3d. The indictment varied fatally from the record as to what was the material issue in that suit. The record showed the issue to have been that the bank discounted the note usuriously. The indictment showed the issue to have been that Fake discounted and took the usury.

4th. That there was a fatal variance between the indictment and the proof on two points.

1st. As to Burroughs being called and sworn as a witness on the issues between the plaintiffs and John Burroughs only (such being the allegation in the indictment), when the proof showed he was called and testified for both John Burroughs and McFarland.

2d. The proof showed that the real discounting was by the bank (not by Fake individually), and so sworn by Burroughs. But the indictment charged that he swore that Fake individually discounted the note.

These objections were severally overruled by the court, to each of which decisions the counsel for the defendant excepted.

The defendant was found guilty and sentence suspended for the purpose of taking the opinion of the supreme court.

*R. W. Peckham,* for the prisoner, made the following points:

I. That said indictment charges no offence and alleges no issue that could have been material on the trial of the former suit.

II. Any charge, as laid in the indictment that Fake took usury, did not even conduce to show that the bank took usury, on that note, which was the only issue in that suit. 1. The testimony of the prisoner was not shown to be material to the issue in the civil suit. The people were bound to show its materiality. (*Roscoe's Cr. Ev.* 3 ed. 820; 3 *Starkie,* 3 ed. 859; 2 *Russell on Crimes,* 5 *Am.* ed. 662; *Wheaton Criminal Law,* 423, 483.) 2. There is no proof in the case that Fake had authority to act for the bank. That the by-laws authorize him to act, or that he was accustomed so to act, when he discounted a note. His being president did not make him the bank, certainly not — without further proof. 3. If intended to insist that Fake acted as president, it should so have been interpreted by innuendo in the indictment, and should have been sustained by proof of his authority or practice ratified by the bank. Here the people show that the prisoner swore, on an issue whether the bank took usury, that Fake took usury — can they convict the prisoner of perjury, by showing that the bank took no usury? It is gravely said that Fake was proved to be president of the bank. What then? He may also have been preacher of St. Paul's church. Does that vary his act? It is a mere description of the person. It in no manner, so far as shown, makes his act the act of the bank or of the church; (6 *Hill,* 240) further proof might make it so, but that must be given by the people.

III. The indictment varies fatally from the record as to what was the material issue in that suit. The record shows the issue to have been that the bank discounted the note usuriously. The indictment shows the issue to have been that Fake discounted and took the usury.

IV. There is a fatal variance between the indictment and the proof, on two points: 1. As to Burroughs being called and

sworn as a witness on the issues between the plaintiffs and John
Burroughs only (such being the allegation in the indictment).
The proof shows that he was called and testified both for John
Burroughs and McFarland.   2. The proof shows the real dis-
counting to have been by the bank, not by Fake individually,
and so sworn by Burroughs.   But the indictment charges that
he swore that Fake individually discounted and took the usury.
(2 *Salk.* 224; 2 *Russell on Crim.* 660; *Roscoe's Ev.* 771; 2
*Starkie,* 624; *Peake's Ev.* 155.)

V. The exception to the introduction of the record was well
taken.   (*Roscoe's Cr. Ev.* 768; 7 *Carr. & Payne,* 559; *Roscoe's
Cr. Ev.* 757.)

*J. K. Porter,* for the people.

I. The indictment alleges that certain questions became and
were material upon the trial; and the assignment of perjury
relates to the testimony of the defendant in relation to those
matters.   1. Where the materiality of the testimony appears
from the statement of the issue and the evidence, no averment
of materiality is necessary.   (8 *Wendell,* 636.)   2. Where it
does not so appear, it is *sufficient* to aver in the indictment that
the matters in relation to which perjury is assigned, became and
were material upon the trial.   (*Wharton's Criminal Law,* 482;
1 *Nott & McCord,* 546, 553; 1 *Devereux Rep.* 519; 12 *Mass. R.*
274; 5 *Durnf. & East,* 311, 318–9: 2 *Russell on Crimes,* 541;
4 *Wentworth Pl.* 239, 240; 5 *Wendell,* 20.)

II. The indictment charges the offence of perjury, and avers
every fact essential to sustain the charge.   1. It alleges that
the oath was duly administered; that the testimony was given
in an action at law, and before a competent tribunal; that the
evidence was material and false; and that it was given wick-
edly, corruptly and feloniously.   2. Such an indictment is good
at common law.   (*Archbold's Cr. Pl.* 568.)   3. The indictment
avers every fact, which, under the statute, constitutes an in-
gredient of the offence, and such an indictment is always held

sufficient, except in cases of treason. (1 *Baldwin's R.* 79, 119; 2 *Gallison R.* 15, 18.)  4. " The indictment in this case contains the substance of the offence, with the circumstances necessary to render it intelligible, and to inform the defendant of the allegations against him."  This is all that is requisite. (5 *Wendell*, 9, 20.)

III. The testimony of the defendant was upon questions which are shown to have been *in fact* material upon the trial.  1 The allegation of John Burroughs was, that the note was discounted by the corporation at a usurious rate.  2. To prove this allegation, the defendant was called, who testified that it was discounted by John S. Fake, at a usurious rate.  It was proved that Fake was the president of the bank.  It was admitted by the pleadings that the loan was made to the defendants by the bank; thus establishing the fact that the act of Fake was the act of the bank through him, as its presiding officer. 3. It is not necessary that the evidence should be material to the issue.  It is enough if it tended to establish a fact, which might, when connected with other facts, establish a defence. (2 *L'd Raymond*, 889; 12 *Modern R.* 142; 2 *Russell on Crimes* 541; *Roscoe's Crim. Ev.* 682.)

IV. The objections to the introduction of the record were not well taken.  1. The issue which it proved, was one in relation to which the testimony of the defendant not only " could be material," but *was* material; for if true the note was void in its inception.  2. But if otherwise, it was no objection to the record that it did not prove *all* the averments of the indictment. Other evidence was introduced subsequently to establish the materiality of the testimony.  3. The objection that the record did not show a trial, was unfounded in fact.  4. The record did not fix *the time* of the trial.  That was proved by the clerk.

V. The objection, that the defendant was sworn on the par as well of M'Farland as of John Burroughs, is entirely unfounded.  1. The defendant and M'Farland were joint makers. The endorsers pleaded separately.  The indictment states that defendant testified on the trial on behalf of John Burroughs. It is proved that he did.  If the testimony enured also to the

The People v. Burroughs.

benefit of M'Farland, that fact was not proved. 2. Unless the fact and the averment are necessarily in direct antagonism, the defendant is not entitled to the presumption that the averment is inconsistent with the evidence. (*Wharton's Cr. Law*, 482; *Ryan & Moody, N. P.* 302.) 3. If there *was* a variance, and even a misdescription of *one* of the parties, it would not prejudice the indictment. (2 *Russell on Crimes*, 539; 2 *Campbell's R.* 109.)

VI. The objection of variance between the indictment and the proof, as to the discounting of the note, rests upon erroneous assumption of fact. 1. On the trial of the civil cause, it was admitted of record, and conceded by all parties that the note was discounted by the corporation. 2. The corporation could only discount through some officer of the bank. Some officer did it, and it was material to know who the officer was, and what were the terms of the discount. 3. It was proved on that trial that Fake was president of the bank, and the defendant, was called to prove two facts: 1st. That he was the one who discounted it; 2d. That the discount was at a usurious rate. On both these counts he swore falsely. 4. If the jury had *believed* his evidence, it was clear that the bank loaned him the money at a usurious rate, and the fact that it made the loan through its officer, did not make it any the less the act of the bank.

VII. There is no variance or imperfection in the indictment, but if those which are alleged existed, they belong to that class which our courts have *adjudged* to be " matter of form" within the meaning of the statute. (5 *Wendell*, 10, 19, 20; 2 *R. S.* 728, § 52; 12 *Wend.* 45, 431; 3 *Barbour, S. C. R.* 470.)

*Per Curiam.* We think the offence sufficiently charged in the indictment. It was enough to aver that the matters, in relation to which perjury was assigned, became and were material upon the trial. It was unnecessary to aver that Fake was acting as an officer of the bank, or to state in what other way he was connected with the transaction. That is left to be proved on the trial, under the general averment of materiality.

We think the indictment sufficient, and that it was supported by the requisite proof.

The objection to the introduction of the record in evidence was properly overruled.

There was no variance between the allegation in the indictment that the prisoner was sworn and examined in behalf of John Burroughs, and the proof that he was sworn and examined in the cause. Being a joint maker with Samuel M'Farland, his testimony could not have been received for him, and could only be made available in favor of the endorser.

The proceedings of the Oyer and Terminer must be affirmed and the cause remitted to that court that sentence may be pronounced.