STATE OF MISSOURI, Respondent, v. ALANSON B. WAKE-FIELD, Appellant.

### November 9, 1880.

1. An indictment for perjury must set out the facts showing that the false statements were made as to matters material to the issue pending at the time.
2. If the fact be a necessary link in the chain of evidence necessary to the determination of the main issue in the cause, it is material.
3. In an indictment for perjury, that the oath charged to have been falsely made contains more than the assignment specifies is immaterial.
4. That an instruction merely imposes an unnecessary burden on the prosecution is no ground for reversing the conviction.

APPEAL from the St. Louis Criminal Court, LAUGHLIN, J. Affirmed.

CLINE, JAMISON & DAY, for the appellant: Neither the oath nor the allegations of the indictment can be extended by implication.— The State v. Bailey, 34 Mo. 350; The State v. Holden, 48 Mo. 93; The State v. Keel, 44 Mo. 182; The State v. Shanks, 66 Mo. 560; The State v. Painter, 67 Mo. 89.

F. D. TURNER, for the appellant.

J. C. NORMILE, Circuit Attorney, for the respondent, cited: *Ward* v. *The State*, 2 Mo. 120; *The State* v. *Terry*, 30 Mo. 371; 9 Mo. 837, 838; 16 Iowa, 40.

C. P. JOHNSON, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The indictment alleges that at the time mentioned, and at the Criminal Court of the City of St. Louis, the grand jurors of the city of St. Louis aforesaid, " having been duly sworn to examine and inquire into all matters and things that should come to their knowledge, a certain inquiry, examination, and investigation was then and there being had and made as to whether any member of the board of police commissioners of the city of St. Louis, in the State aforesaid, * * * on the first day of May, A. D. 1878, and on divers other days and times between that day and the fifteenth day of April, A. D. 1879, accepted and received certain bribes for information or knowledge of the time and times when raids would or were expected to be made by the metropolitan police force of said city, or members thereof, upon the gambling establishment kept and carried on by one Robert C. Pate, and other gambling establishments carried on and kept by divers other person or persons to the grand jurors unknown, in the city of St. Louis aforesaid; and said cause, matter, complaint, and proceedings being then and there duly and legally inquired into by the said grand jurors, with a view and for the purpose of finding indictments for bribery and misdemeanor in office against members of said board of police commissioners of the city of St. Louis aforesaid; * * * that in the investigation, hearing, and inquiry of and into said complaint, cause, matter, proceeding, and charges as aforesaid, before said grand jurors so empanelled and sworn as aforesaid, one Alanson B. Wakefield, late of the city of St. Louis aforesaid, did then and there personally appear as a witness in behalf of said matter, cause, proceeding, and complaint and examination; * * * and

that the said Alanson B. Wakefield did then and there take his corporal oath before said grand jurors that the evidence that he, said Alanson B. Wakefield, should then and there give before said grand jurors should be the truth, the whole truth, and nothing but the truth, etc. ;   *   *   *   and that it then and there became and was a material matter and inquiry in the examination and investigation of said cause, matter, proceeding, and charge as aforesaid, by and before the said grand jurors (duly empanelled and sworn as aforesaid), whether he, the said Alanson B. Wakefield, has ever at any time received, etc. ;   *   *   *   and whether he, said Alanson B. Wakefield, received at any time from said Robert C. Pate, money and property, for the purpose of paying the same to the members of the board of police commissioners, for any purpose whatever.''

So much of the testimony given by the defendant as is material to the present inquiry was in the following words :

" Nor did I [meaning said Alanson B. Wakefield] ever receive or collect any money from Robert C. Pate, or any other person in the gambling business, for the purpose of paying the same to any member of the board of police commissioners of the city of St. Louis.''

The assignment of perjury to be here considered is as follows : —

" Whereas, in truth and in fact, the said Alanson B. Wakefield did collect and receive from said Robert C. Pate a large sum or sums of money (the number, amount, or further description is unknown to the grand jurors) for the purpose of paying the same to a member of the board of police commissioners for information when raids were or would be made upon the gambling-house of Robert C. Pate and other persons to the grand jurors unknown.''

In order to a conviction of perjury, it is essential that the false testimony shall have been given about a fact or facts material to the issue or inquiry pending at the time. It is, of course, necessary that such materiality appear in

the indictment. May it sufficiently appear by a simple averment to that effect, or must the indictment also set forth facts from which the materiality of the false testimony will result as a conclusion of law? The authorities generally appear to agree that the first alternative is sufficient. *Rex* v. *Dowlin*, 5 Term Rep. 311 ; *Regina* v. *Bennett*, 4 Eng. Law & Eq. 560 ; *Regina* v. *Scott*, 13 Cox C. C. 594 ; *The State* v. *Mumford*, 1 Dev. 519 ; *The State* v. *Hayward*, 1 Nott & M. 546 ; *The State* v. *Sleeper*, 37 Vt. 122 ; *The People* v. *Burroughs*, 1 Park. Cr. 211 ; *The State* v. *Maxwell*, 28 La. An. 361. See also Whart. Cr. Law, sect. 1304 ; 2 Chitty's Cr. Law, 307 ; 2 Bishop's Cr. Proc., sect. 915 ; 2 Russ. on Cr. 639. The allegation in the present indictment that "it-then and there became and was a material matter and inquiry in the examination and investigation of said cause, matter, proceeding, and charges aforesaid, by and before the grand jurors, etc., \* \* \* whether he, the said Alanson B. Wakefield, had ever, at any time, received money and property from one Robert C. Pate," etc., would appear to be sufficient, and in conformity with the precedents.

In *The State* v. *Holden*, 48 Mo. 93, the same rule is fully recognized by Judge Bliss, delivering the opinion of the court, but the indictment in that case was quashed because it did not even come up to the simple standard thus established. There was, as the opinion shows, no direct allegation that "upon said trial it became material to inquire whether, etc., or certain questions became and were material in substance," as follows, etc., but only a loose allegation, after a statement of the testimony given, that "said evidence was material to the issues at said trial." Says Judge Bliss: "The pleader has confounded the sufficiency of a general allegation of the materiality of the question raised by the issues concerning which the perjury is charged, with that of a simple statement that the testimony charged as false was material." The whole

tenor of the learned opinion is to the effect that the first of these methods would have sustained the indictment, but that the second made it insufficient.

A fair analysis of underlying principles would indicate that the indictment must distinctly state what particular fact had become important as a link in the chain of testimony whereby the issue or inquiry was to be determined. The language of the witness being then introduced, the court would perceive whether such language was an affirmation or a denial as to that particular fact or link. The assignment following, and showing what was the truth as to the particular fact or link, it would further be perceived, as matter of judicial inference, whether a perjury had been committed. We do not perceive that the decision in *The State* v. *Holden*, *supra*, requires anything more than an adherence to these principles. The process gives no sanction to a mere general allegation that " the testimony was material to the issues."

But later decisions of our Supreme Court seem to adopt a different rule. In *The State* v. *Keel*, 54 Mo. 182, the indictment averred that " it became important, and was material to the issue, and to the matter then material to the issue and investigation of said complaint, * * * whether * * * a ball was not had and held at, etc. ; * * * whether at said ball," etc., certain events had occurred concerning which the defendant was charged with having falsely testified. The court held the indictment bad, because the averments relating to materiality were " but allegations of a legal inference, and not of a distinct fact."

The general conclusion, as it appears in the head-note, was that, in " indictments for perjury, the facts showing the materiality of the testimony must be plainly and distinctly set forth." In *The State* v. *Shanks*, 66 Mo. 560, the indictment charged the defendant with perjury in an affidavit denying the execution of a promissory note. The court held ( citing *The State* v. *Keel*, *supra* ) that " an averment

that the defendant made the execution of the note a material issue, or that it then and there became material to inquire and ascertain whether he d'd execute it, only states a legal conclusion, and is insufficient.''

These later judicial declarations are the law for this court. It results that, in order to sustain the present indictment, we must look for the requisite materiality of the defendant's testimony elsewhere than in the simple averments thereof. For this purpose, however, it is sufficient to perceive that a receipt or collection of money by one person from another, for the express purpose of paying it to the police commissioners, will reasonably serve as a link in the chain of evidence which is to show that the money was actually paid to the commissioners for an object to be developed by further proofs. Much of the argument of defendant's counsel seems to assume that the requisite materiality cannot appear unless the alleged testimony goes to the very body of the crime or other matter undergoing investigation. It is contended, in effect, that here the only issue or subject of inquiry by the grand jury was the bribery of police commissioners, and that this is the limit within which perjury could be committed by any witness on that occasion ; that, therefore, inasmuch as the defendant's testimony neither proved nor disproved a bribery, and inasmuch as the indictment fails to show that a bribery, or even an attempt to bribe, was in fact committed, the testimony could not have been material, and there was no perjury. This argument loses sight of elementary principles. The commission of a crime is established in most cases by comparing together a series of distinct facts, no one of which would be sufficient of itself, though it may be absolutely necessary for the conclusion which will result from a consideration of all the facts together. Thus, upon a charge of murder, proof that the accused had a certain knife in his possession before and up to the time when the deed was done, and that the same knife was afterwards found sticking in the fatal

wound, would go very far toward fixing the homicide on the accused. But if the testimony should stop at the possession of the knife, no crime would be fixed upon any one. So of the finding of the knife in the body of the slain, without any proof connecting the accused with its possession or ownership. Neither fact would have any significance without the concurring tendencies of the other. Must it therefore be assumed that neither fact is material, and that false swearing as to either would not be perjury? On the contrary, each fact, although insufficient of itself alone to prove even that a crime has been committed, is yet, because of its relation to other facts in proof, material to the issue or investigation. Were it otherwise, there might be false swearing as to every link in the necessary chain of evidence, and yet no perjury at all. The law offers no such immunity to those who would falsely defeat the ends of justice. If, in the present case, the fact about which the defendant swore was nothing more or less than a link in the chain of testimony tending to prove or to disprove a bribery of the police commissioners, then his testimony was material to the pending inquiry as fully as if it had gone squarely to the act of bribery itself.

The position that the indictment is bad because it does not show that a bribery or an attempt at bribery was in fact committed, cannot be sustained. If a witness swears falsely as to any fact which is material to the determination of a main issue or inquiry, he is guilty of perjury, howsoever such main issue may be determined, or whatsoever may be the historical truth concerning it. A contrary rule would make the guilt or innocence of the false witness contingent upon the result of his falsehood. The law demands absolute purity in the light which is to guide its explorations, and will tolerate no blemish of untruth, though it may fail to lead astray. If, in a murder case, a witness should testify that he was present at the homicide, and that the fatal blow was struck, or that it was not struck, by the

prisoner on trial, and it should appear that his testimony, in whichever event, was wilfully false, he would be guilty of perjury whether the prisoner were acquitted or convicted; and even if it were true that no crime had been committed, what penal consequences would deter a man from testifying falsely about material facts if his secret knowledge that there had been no crime should assure him of safety from a prosecution for perjury? Such an administration of the criminal law would be a standing invitation to wholesale falsehood. The question whether a bribery was or was not committed or attempted is immaterial to the present inquiry, and neither principle nor precedent requires that the indictment should have anything to say on the subject.

It is asserted that, inasmuch as the oath taken by defendant was to the effect that he did not " receive or collect any money, etc., for the purpose of paying the same to any member of the board of police commissioners," while the assignment alleges that he did receive and collect money, etc., for the purpose of paying the same to a member of the board of police commissioners " for information when raids were or would be made," etc., therefore the assignment enlarges upon the oath, and this is inadmissible. But the assertion involves a perversion of terms. The oath, in what it comprehends, is really larger than the assignment. The denial in the oath extends to any collection or purpose of payment for any consideration whatsoever. The assignment, instead of enlarging upon this, limits itself to the collection and purpose of payment for a particular consideration, to wit: " for information when raids were or would be made," etc. The last is included within the first, and does not at all create any new or illegitimate effect. The case is analogous to that of *The Commonwealth* v. *Smith*, 11 Allen, 243. There the oath taken by the witness was to the effect that a certain woman had not lived with one Smith before her marriage. The

assignment of perjury and the evidence to sustain it were that the woman had so lived with Smith as his mistress. The court, holding that there was no error, said: " To testify that she never lived with Smith was to testify that she never lived with him as his mistress. That the answer included more than was material makes no difference." So, in the present case, to testify that there was no purpose of payment was to testify that there was no purpose of payment for information about raids, etc. That the oath comprehends more than the assignment specifies can work no prejudice to the defendant.

We are unable to appreciate the objection that the alleged purpose of defendant in receiving and collecting, etc., was incapable of proof. It is no novel proposition that a man's purposes may be substantially proved by his acts, considered in connection with the surrounding circumstances. Were this otherwise, no criminal charge could ever be sustained; for intent, or purpose, is an essential ingredient of every crime. The two witnesses, or the one witness supported by corroborating circumstances, as required for a conviction of perjury, can never, in any case, do more than state facts, to satisfy the jury that the defendant has sworn falsely with criminal intent.

It is objected that an instruction made it one of the conditions of conviction that certain purposes were entertained by one Pate, whereas there was neither charge nor proof that Pate had any such purposes. As this instruction, if such was its effect, only imposed an unnecessary burden on the prosecution, it could not harm the defendant, and there can be no reversal on that account

The judgment is affirmed. All the judges concur.