THE  STATE,  Appellant,  v.  CLARENCE
ACKERMAN.

Division Two, November 24, 1908.

1. **PERJURY: Materiality.** If the false statement made by a wit-
ness before a grand jury be circumstantially material or tends
to support and give credit to the other testimony as to the
main fact in issue, it is perjury.

2. ———: ———: **Illegal Sale of Liquors: Hauling Beer: Quash-
ing Indictment.** Where the grand jury were making an inves-

tigation of the sale of beer by Smith and Brent in Henry county outside of Clinton, false statements made by defendant to the effect that he did not receive from a saloon in Clinton thirty-five cases of beer and haul them to Deepwater in the nighttime and deliver them to said Smith and Brent, were perjury. The matters sworn to by him, though collateral to the main issue, namely, whether Smith and Brent had illegally sold intoxicating liquors, were material to that issue; and although insufficient of themselves to establish their guilt, or even to prove that a crime had been committed, yet because of their circumstantial relation to other facts which would tend to establish the illegal sale, they were material, a link in the investigation, and a false answer as to them constituted perjury; and the court erred in sustaining a motion to quash an indictment charging that defendant had falsely sworn that he did not haul said beer.

Appeal from Henry Circuit Court.—*Hon. C. A. Denton,* Judge.

REVERSED AND REMANDED.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) The indictment is sufficient. R. S. 1899, secs. 2033, 2039; State v. Faulkner, 175 Mo. 546; State v. Huckley, 87 Mo. 414; Joyce on Indictments, p. 781. (2) It is not essential that the false statement tend directly to prove the issue. If it be circumstantially material, or if a true statement would form a link in the chain of evidence necessary to establish the offense, and tend to support and give credit to a witness in respect to the main fact, it is perjury. State v. Faulkner, 175 Mo. 568; State v. Day, 100 Mo. 242; Kelley's Crim. Law, sec. 824, p. 555.

GANTT, J.—On September 13, 1907, the grand jury of Henry county, Missouri, returned an indictment against the defendant charging him with having committed willful and corrupt perjury by testifying falsely in a proceeding before the grand jury of said county on the 12th of September, 1907. The de-

fendant filed a motion to quash the indictment, which was sustained by the court, and a motion for a new trial was overruled and appeal granted to the State. The indictment is in the following form:

"*State of Missouri, County of Henry, ss.*

"In the Circuit Court, September Term, 1907.

"The grand jurors for the State of Missouri, duly impaneled, sworn and charged to inquire within and for the body of the county of Henry, and State of Missouri, upon their oath present and charge: That at the county of Henry, and State of Missouri, on the 12th day of September, 1907, and during the September term, 1907, of said court, the grand jury of the State of Missouri, within and for the body of the county of Henry, were then and there duly and legally convened, having been then and there duly and legally impaneled, sworn upon their oath, and charged according to law in said court, and that a certain complaint was then and there made and presented before said grand jury, against one Harve Smith and George Brent, for the offense of illegal sale of intoxicating liquor, including beer, committed by said Harve Smith and said George Brent, in the said county of Henry, outside of the city of Clinton, and that in the investigation and hearing of said complaints before said grand jury, so impaneled and sworn as aforesaid, it developed that on or about the night of the 17th day of June, 1907, one Clarence Ackerman, a drayman operating a dray wagon in said Henry county, between Clinton and Deepwater, hauled a dray wagon load of beer, said load of beer consisting of twenty-five or thirty cases of beer from the back door of J. N. Bixman's dramshop, in said city of Clinton, to the barn and residence of Harve Smith, in said city of Deepwater, and there unloaded the same, and that at various times since said 17th day of June, said Clarence Ackerman hauled loads of beer at night from Clinton

for said Harve Smith, at Deepwater, consisting of fifteen to twenty cases of beer to the load, and that at various times prior to said 12th day of September, 1907, said Clarence Ackerman hauled wagon loads of beer in cases from Clinton to and for George Brent of Deepwater.

"That at said investigation said Clarence Ackerman was duly summoned as a witness before said grand jury and did then and there personally appear as a witness before said grand jury in regard to said complaint, and that said Clarence Ackerman was then and there duly sworn by the foreman of said grand jury and took upon himself his corporal oath, the said foreman, to-wit, one Charles H. Williams, being then and there duly and legally authorized and empowered and having competent authority to administer the said oath to the said Clarence Ackerman, and that then and there it became important and was material to the issue and to the investigation of said complaints by said grand jury, whether said Clarence Ackerman had any knowledge of said transportation and hauling of beer from Clinton to Deepwater, and for whom the hauling was done, and the time and circumstances thereof.

"And then and there he, the said Clarence Ackerman, on his corporal oath and before said grand jury, did feloniously, falsely, corruptly, knowingly, willfully and maliciously depose and swear in substance and to the effect following: That he, never, at any time, hauled a dray wagon load of beer to Deepwater; that he never unloaded any beer at Harve Smith's barn; that he never hauled anything for Harve Smith; that he never hauled any beer for George Brent; that he never hauled any beer for Harve Smith; that he never made a trip to Deepwater at night, whereas, in truth and in fact, the said Clarence Ackerman, on or about the 17th of June, 1907, hauled a dray wagon load of

beer to Deepwater; and whereas, in truth and fact, he did haul beer for George Brent; and whereas, in truth and fact he did haul beer for Harve Smith; and whereas, in truth and fact he did make trips to Deepwater at night, all of which the said Clarence Ackerman then and there well knew.   And so the grand jurors, aforesaid, upon their oath aforesaid, do say that the said' Clarence Ackerman, at the county of Henry aforesaid, on the 12th day of September, aforesaid, in the year 1907, in the manner and form aforesaid, feloniously, falsely, knowingly, willfully and corruptly committed willful and corrupt perjury, contrary to the form of the statute, and against the peace and dignity of the State.

"NICHOLAS B. CONRAD,
Prosecuting Attorney.

"A true bill.
C. H. WILLIAMS,
Foreman of the Grand Jury."

The defendant is not represented in this court by counsel and we must look to the grounds assigned in the motion to quash, as the basis of the judgment of the court in quashing the indictment.   From these it appears that it was insisted by the defendant in the circuit court that, assuming the truth of all that was charged against the defendant, the matters sworn to by him before the grand jury were wholly immaterial' and collateral to the question or matter under consideration by the grand jury, to-wit, the illegal selling of intoxicating liquors, including beer, by Harve Smith and George Brent in said county, and therefore could not form the predicate for a charge of perjury.

It appears from the averments in the indictment that the grand jury had been duly and legally selected, impaneled and sworn in the circuit court of Henry county at its September term, 1907, and that a certain complaint had been presented to them against Harve

Smith and George Brent for illegally selling intoxicating liquors, including beer, in said county of Henry outside of the city of Clinton, and that the defendant Ackerman had been duly summoned as a witness before the said grand jury in regard to said complaint and had been sworn by the foreman of the grand jury, and that it was then and there material and important to know whether Ackerman had any knowledge of the transportation and hauling of beer from Clinton to Deepwater and for whom the hauling was done and the time and circumstances thereof. The indictment thus names and particularizes the body before whom the alleged perjury was committed, and the investigation of the guilt of persons named therein, and the materiality of the evidence in said investigation by the grand jury, and that the oath was administered to the defendant by the foreman, and the indictment then sets out the evidence which the defendant gave before the grand jury and then proceeds to assign perjury upon this evidence. In substance it is alleged that the defendant then and there before the said grand jury feloniously, falsely, corruptly, knowingly, willfully and maliciously did swear and testify that he never, at any time, hauled a wagon load of beer to Deepwater, and never unloaded any beer at Harve Smith's barn; that he never hauled any beer for George Brent and that he never made a trip to Deepwater at night, whereas, in truth and in fact, the defendant did on or about the 17th of June, 1907, haul a dray load of beer to Deepwater and unloaded the same at Harve Smith's barn, and that he did haul beer for George Brent and frequently made trips to Deepwater at night. It would seem that the contention of the defendant is that, because the indictment did not allege any false evidence on the part of the defendant as to the actual illegal selling of beer or other intoxicating liquors by the said Smith and Brent, therefore, the fact of the

knowledge of the defendant of the receipt of large quantities of beer by the said Brent and Smith, on the part of the defendant, and of his having hauled the same to Deepwater, the place of sale, in the nighttime, and delivered the same to the said Smith and Brent, was wholly immaterial, and the circuit court took this view of the law, and held that even if the testimony of the defendant was knowingly false and corrupt it could not constitute perjury. We think this was a mistaken view of the law.

In State v. Faulkner, 175 Mo. 546, we had occasion to investigate the sufficiency of a charge of perjury committed before a grand jury, and in the course of the opinion in that case, we followed with approval the opinion of this court in Ward v. State, 2 Mo. 120, wherein it is said: "It is a solemn and important duty that every citizen owes to his country to give evidence in courts of justice against offenders against the peace and good order of the community." And in the Faulkner case, we reiterated the ruling made by this court in State v. Terry, 30 Mo. 368, that perjury can be committed before a grand jury in its investigation of crime, and said: "Any knowledge or information possessed by him [the defendant in the case] concerning 'the existence of such fund and the purposes for which it was to be used' was material to the inquiry the grand jury was then making. It was the natural and orderly way in which the grand jury would ascertain the material facts upon which to base an indictment or to refuse to find one. It was their sworn duty to obtain the legal evidence to ascertain the witnesses by whom the charge could be substantiated, and to endorse their names on the indictment, not alone for the benefit of the prosecuting attorney, but for the protection of the person charged in the indictment in the preparation of his defense. This inquiry and the defendant's answer, taken in connec-

tion with the allegations of the indictment, discloses the materiality of the question and answer to the inquiry then being made.''

So, in this case, in the investigation of the charge that Smith and Brent had been guilty of illegal sales of intoxicating liquors, including beer; that the same had been sold in said county outside of Clinton, the county seat, we think it was a perfectly natural thing for the grand jury to seek evidence as to the possession of such liquor by the said Brent and Smith at the time of the alleged sale, and they had the right to require the defendant in this case to disclose the fact, if such it was, that he had in the month of June, 1907, hauled a dray load of beer from a saloon in the city of Clinton to the residence of the said Smith in the city of Deepwater, and also wagon loads of beer from Clinton to the said Brent in Deepwater. It was not necessary that the said defendant should have been present and witnessed sales of the said beer to other persons in Deepwater by the said Brent and Smith, or that they should have told the defendant of such sales. It is not to be expected that any one witness before a grand jury, any more than in the trial of a case in court, will be able to depose to the whole case. As said by this court in State v. Day, 100 Mo. l. c. 249, ''Nor is it necessary in such cases that the false statement tends directly to prove the issue in order to sustain the indictment for perjury. If it be circumstantially material or tends to support and give credit to the witness in respect to the main fact, it is perjury.'' And to the same effect is State v. Wakefield, 73 Mo. 549, and the cases therein cited. In the same case, 9 Mo. App. 326, it was said: ''Each fact, although insufficient of itself alone to prove even that a crime has been committed, is yet, because of its relation to other facts in proof, material to the issue or investigation. Were it otherwise, there might be false

swearing as to every link in the necessary chain of evidence, and yet no perjury at all. The law offers no such immunity to those who would falsely defeat the ends of justice." Especially is this true in an investigation before a grand jury. Their sworn duty is to inquire and true presentment make. They cannot tell in advance of inquiry whether in fact an offense has been committed or who committed it. They can only act upon testimony given under oath by witnesses produced, sworn and examined before them, or upon legal documentary proof. They are at liberty to inquire for evidence to establish a charge link by link and are entitled to true answers. In determining whether there was sufficient evidence upon which to base an indictment against Smith and Brent or either of them for the illegal sale of intoxicating liquor in said county, it was important and material, if such was the fact, that they should know that the defendant in this case did haul large quantities of beer and intoxicating liquors from Clinton to Deepwater where the alleged illegal sales had been made by Brent and Smith, and especially if these liquors had been hauled by the defendant in the nighttime under the cover of darkness. Of course if it should have afterwards turned out in the course of the investigation that Brent and Smith or either of them were duly authorized and licensed to sell said intoxicating liquors and beer at Deepwater, then the fact that the defendant had hauled and delivered said liquors to them, had no circumstantial connection with an illegal act, for then no crime had been committed, and there was no reason why the defendant should seek to hide that fact from the grand jury, but if in the further investigation of said offense it should turn out that neither Brent nor Smith were licensed to sell said liquor in said county, or that perchance the Local Option act was in force in said county outside of the city of Clin

ton, and therefore Smith and Brent could not be lawfully licensed or authorized to sell said liquors in said county, but had done so, then the fact of their being possessed of large quantities of liquors, and that the defendant had been the carrier which transported said liquors to them, was a most material fact for the grand jury to know, and if the defendant willfully and corruptly testified before the grand jury that he did not haul said liquors to Brent and Smith then he was guilty of perjury.

In our opinion the circuit court erred in quashing this indictment on the ground of the immateriality of the alleged testimony of the defendant before the grand jury.    And hence the judgment must be reversed and the cause remanded to the circuit court for further proceeding.    And it is so ordered.

*Fox, P. J.,* and *Burgess, J.,* concur.

---

THE STATE v. JAMES McDOWELL, Appellant.

Division Two, November 24, 1908.

1. LARCENY: Evidence: Drunkenness.    Where defendant, a deputy marshal, charged with grand larceny, claimed he arrested the prosecuting witness for drunkenness and disorderly conduct, testimony by the State that he was not drunk or disorderly prior to his arrest, is competent.

2. ———: ———: Display of Money.    Where defendant, a deputy marshal, is charged with grand larceny of money from the prosecuting witness whom he arrested, testimony that said witness made a display of money in a saloon, just prior to his arrest, and the amount of such money, and how he carried it, is competent.

3. ———: Deputy Marshal: Significant Facts.    Hodges, a very old man, several times in the late afternoon and early evening bought whiskey for others in a saloon, and displayed five twenty-dollar bills, none of which the barkeeper could change, and which he thereupon uniformly placed in a pocketbook carried in an inside pocket.    He also had two or three dollars in change, and with this paid for the drinks.    Early in the

evening just after he had stepped out of the saloon he was arrested by defendant, a deputy marshal, for drunkenness and disorderly conduct, as defendant says, and taken to the calaboose, and there defendant brandished his club, and, using much profane language, demanded his pocketbook, which was given to him, and defendant turned from the cell in which he had placed Hodges, to a light in the hall near by, with his back to Hodges and the other witness present, and opened the pocketbook and examined its contents for a short time. Then he called the other witness and told him to witness that the pocketbook contained only one twenty-dollar bill. Hodges insisted that it contained five such bills, and demanded the return of the money, and defendant returned the pocketbook, containing one such bill, to him.   He is indicted for the larceny of $80.   *Held*, that his testimony that he did not take Hodges before the mayor or any court, and released him at one o'clock of the same night, is significant, as is also his further testimony that when he asked for Hodge's pocketbook he said to him, "There is no telling who I will throw in with you to-night," yet nevertheless returned to him the pocketbook containing $20; and, the evidence is sufficient to support a verdict of guilty.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

Affirmed.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1)   The information is substantially in the language of the statute defining the offense; it fully informs defendant of the nature and cause of the accusation against him, and is sufficient.   It is true that the information does not allege the value of the money, but when money itself is the subject of larceny its value need not be alleged or proved.   State v. Brown, 113 N. C. 645; Turner v. State, 124 Ala. 59; State v. Helvin, 65 Iowa 289; McCarty v. State, 127 Ind. 223; 4 Elliott on Evidence, sec. 3135; R. S. 1899, sec. 2531.
(2)   (a)   In three instances defendant objected to the action of the trial court in admitting evidence, but did not give the court any reason for the objec-

FOX, P. J.—This case is brought to this court by
appeal on the part of the defendant from a judgment
of conviction in the Phelps circuit court of the offense
of grand larceny.