### THOMAS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1926.)

No. 7292.

**1. Embracery** &⟶1—Success of endeavor to influence jury is not essential to offense (Criminal Code, § 135 [Comp. St. § 10305]).

Under Criminal Code, § 135 (Comp. St. § 10305), making it an offense to corruptly endeavor to influence a juror, it is the endeavor, and not its success, that constitutes the crime.

**2. Criminal law** &⟶517(1), 530—Confession or admission of incriminating facts is competent; it may be oral or written, or partly each, and may be made on one or different occasions.

A confession or statement of incriminating facts is always competent, and may be shown to have been made in writing or orally, or part in writing and part orally, or both in writing and orally, on one occasion, or on different occasions.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Criminal prosecution by the United States against Lafayette Thomas. Judgment of conviction, and defendant brings error. Affirmed.

Will Steel and Pratt P. Bacon, both of Texarkana, Ark., for plaintiff in error.

S. S. Langley, U. S. Atty., of Ft. Smith, Ark., and James D. Shaver, Sp. Asst. U. S. Atty., of Texarkana, Ark.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge. Plaintiff in error complains of his trial and conviction on an indictment which charged him with violation of section 135 of the Criminal Code (section 10305, U. S. Comp. Stat.). Among the acts denounced as criminal offenses by that section are these: (1) Corruptly endeavoring to influence any petit juror or officer in or of any court of the United States, in the discharge of his duty; (2) corruptly endeavoring to influence, obstruct or impede the due administration of justice in said courts. The indictment charged that the trial of a criminal case entitled "United States v. Morton Howard Marr and others," in the Texarkana Division of the District Court for the Western District of Arkansas, was begun on April 8, 1924, and continued for two weeks, that a petit jury was impaneled in said case on said date and the court ordered that the jury be kept together in charge of the marshal of the district, that Herbert Adams was appointed, qualified and sworn as bailiff and placed in charge of said jury and continued as such bailiff in charge of said jury throughout the trial of said case, that on or about April 10, 1924, while said Adams was in charge of the jury and defendant well knew that fact, the defendant, during the progress of the trial, approached Adams while he was acting as bailiff in charge of said jury, and corruptly endeavored to influence said Adams in the discharge of his duties as bailiff, he engaged the said Adams in conversation and asked him

how he would like to make $5,000, that he (defendant) thought he knew a man who would pay $5,000 to any one who would hang the jury in the case then on trial and that he would see the bailiff again about it, and that by means of said statements and request the defendant endeavored to convey to Adams and to the petit jurors an offer to pay money to Adams and the jurors in return for hanging said jury, thereby causing a mistrial of the case.

There was a demurrer to the indictment, which the court overruled, and that ruling is assigned as error. We think the charge fully embodied an offense defined by the section and it advised the defendant sufficiently of the facts to enable him to prepare his defense.

Adams, the bailiff, testified that defendant came to him while he had charge of the jury and said to him: How would you like to make $5,000? I think I know a man who would pay it to hang the jury in the Marr case—and that he (defendant) would see Adams later. The defendant set up an alibi. He testified that he was not in Texarkana from April 7th to the 16th, inclusive, that he came to Texarkana on April 17th, left there the next day and was absent several days thereafter. He brought witnesses from outlying towns in Arkansas and neighboring states to corroborate his testimony in being at different places during the time that he claimed he was not in Texarkana. He denied that he was in court during the trial of the case against Marr and others. Witnesses for the prosecution testified to the contrary, stating that they had seen him in court on different occasions during the trial and on the streets in Texarkana. Herbert Adams testified that he had known the defendant about 3½ years, that the Marr trial had been on for two or three days when defendant came to him in the lobby of the post office in Texarkana when he was asking for mail for the jurors and some others. It was about 8:30 in the morning. The jury had just had breakfast and they were upstairs. He had brought them over to court after breakfast. He had left the other bailiff in charge while he went for the mail, that defendant came in, came up to the witness and asked him if he wanted to make $5,000, and said he thought he knew a man that would pay that to have the jury hung in the Marr case, and defendant then said he would see the witness later. He further testified that the defendant was in the courtroom the morning the jury was impaneled and the witness sworn in as bailiff, and that he saw the defendant there every day,

that on one occasion, as the jury was passing out of the courtroom defendant got in among them. Witness pulled him back and told him he did not allow anybody mixing with the jury. This occurred before the conversation in the post office. An agent for the Department of Justice obtained from the defendant a written statement, which was offered in evidence, in which the defendant is represented as saying that on the day before the case of United States v. Marr and others was given to the jury he came out of a hotel in Texarkana, passed a bunch of four men and heard one of them say that he would give $5,000 if he could get next to the jury, and that later on that day he told Herbert Adams something about $5,000 and what he had heard, but he did not remember the details of what he told Adams. The agent testified that he took this statement from the defendant, that he wrote it down as the defendant gave it to him and the defendant then signed it, L. Thomas. The defendant testified that the agent interrogated him about the matter but that he told him there was no truth to it and that at the agent's request he signed his name on a blank piece of paper and did not sign a written statement.

[1] A general summary of the material facts, outlined above, clearly made an issue for the jury on the charge. The Supreme Court, in United States v. Russell, 255 U. S. 138, 41 S. Ct. 260, 65 L. Ed. 553, had occasion to consider the sufficiency of an indictment based on this section of the Code. There it was charged that the defendant endeavored to ascertain in advance of the examination of a juror as to his qualifications to sit as a petit juror in a pending criminal cause, whether the juror would be favorably inclined toward the defendants, and corruptly endeavored to induce the juror to favor acquittal in case he should be selected as a juror, and for that purpose the defendant called at the juror's home, engaged his wife in a conversation, in the course of which the defendant told the prospective juror's wife that he represented the defendants, asked her to question her husband as to his attitude toward them and report the results of such questioning to the defendant, because, as then and there stated by defendant to the juror's wife, they did not want to pay money to any of the petit jurors unless they knew such jurors would favor acquittal. The court, in applying the allegations to the statute for the purpose of testing the sufficiency of the indictment, said:

"The word of the section is 'endeavor,' * * * and it describes any effort or essay

to accomplish the evil purpose that the section was enacted to prevent. * * * The section, however, is not directed at success in corrupting a juror but at the 'endeavor' to do so. Experimental approaches to the corruption of a juror are the 'endeavor' of the section. Guilt is incurred by the trial—success may aggravate, it is not a condition of it."

[2] The special agent who, as he claims, took the defendant's written statement which was offered in evidence, testified to the conversation between himself and the defendant on that occasion. It is assigned as error that the court refused to withdraw from the jury the testimony of the agent after it was discovered the defendant had made a written statement; also that the court erred in permitting the introduction of the written statement, and in overruling defendant's motion to exclude the written statement and in permitting the witness to testify that the written statement of defendant was a voluntary statement. As to the last point, it is sufficient to say that the agent, in both direct and cross-examination, told in great detail the interview between him and the defendant at the time the written statement was made, and there could have been no possible prejudice arising from the statement objected to. The other points are obviously without merit. A confession or statement of incriminating facts is always competent and may be shown to have been made in writing or orally, or part in writing and part orally, or both in writing and orally, on one occasion or on different occasions.

No requests were made for instructions and no exceptions were taken to those given the jury by the court. We find no error in the record and the judgment is affirmed.