## CARROLL v. UNITED STATES. *

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 152.

1. **Perjury** ⊜36—**Trial court's ruling as matter of law that testimony before grand jury was material with respect to violation of prohibition law held not erroneous (Criminal Code, § 125 [Comp. St. § 10295]).**

In prosecution under Criminal Code, § 125 (Comp. St. § 10295), for perjury, trial court's ruling as a matter of law that defendant's testimony before grand jury relative to girl bathing in tub of wine was material with respect to alleged violation of National Prohibition Act (Comp. St. § 10138¼ et seq.), held not erroneous, since relating to questions designed for purpose of identifying witnesses, and thereby tending to mislead grand jury and deprive them of knowledge thereof.

2. **Perjury** ⊜11(7)—**Test of materiality in grand jury investigation is whether false testimony impedes or dissuades grand jury from pursuing investigation.**

The test of materiality in grand jury's investigation is whether false testimony has nat-

*Certiorari denied 47 S. Ct. 477, 71 L. Ed. ——.

ural effect or tendency to influence, impede, or dissuade grand jury from pursuing its investigation.

**3. Perjury ⬅⟹36—Materiality of testimony before grand jury is question of law for court.**

Whether testimony given before grand jury was material is question of law for the court, and not for the jury.

**4. Criminal law ⬅⟹887—Jury must follow rules of law given by trial judge.**

The jury must be guided by the rules of law as advised by the trial judge.

**5. Criminal law ⬅⟹878(4)—Verdict on one count of indictment is not invalid, because apparently inconsistent with verdict on another count.**

A verdict on one count of an indictment, which is consistent with it, is not invalid because apparently inconsistent with verdict of jury on another count.

**6. Criminal law ⬅⟹322—Presumption is that grand jury was properly selected.**

In absence of showing to contrary, presumption is that grand jury, before whom appearance was made, was properly selected and drawn according to law.

**7. Jury ⬅⟹131(13)—Refusal to permit defendant's counsel to personally examine talesmen on voir dire held not error (Common-Law Rules, rule 9).**

Under Common-Law Rules for the District Court for the Southern District of New York, rule 9, refusal to permit defendant's counsel to personally examine talesmen of jury on voir dire was not error.

**8. Perjury ⬅⟹36—Evidence of perjury held for jury (Criminal Code, § 125 [Comp. St. § 10295]).**

Evidence in prosecution for perjury, under Criminal Code, § 125 (Comp. St. § 10295), *held* for jury.

In Error to the District Court of the United States for the Southern District of New York.

Earl Carroll was convicted of perjury, and he brings error. Affirmed.

Wellman, Smyth & Scofield, of New York City (Herbert C. Smyth, Harold R. Medina, and Roderic Wellman, all of New York City, of counsel), for plaintiff in error.

Emory R. Buckner, U. S. Atty., of New York City (John M. Harlan and Horace G. Hitchcock, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and MACK, Circuit Judges.

MANTON, Circuit Judge. The indictment charges, in the first three counts, perjury in three separate statements made before the United States grand jury on February 26, 1926. The remaining three counts charge perjury in making the same statements on March 4, 1926, before another grand jury. The first and fourth counts of the indictment allege in substance that the plaintiff in error testified that he did not have in his possession and had no knowledge of the existence of any record of any kind showing the names of persons who had been invited and who attended a party given by him at the Earl Carroll Theater on the evening of February 22, 1926, and the early morning of February 23, 1926. The second and fifth counts allege that he testified that he had possessed or furnished no intoxicating liquor of any kind at this party. The third and sixth counts allege that he testified that at no time during this party did any one get into, fall into, or enter a bathtub which had been placed upon the stage of the Earl Carroll Theater. The first and fourth counts were dismissed by direction of the court. The jury found the plaintiff in error not guilty on the second and fifth counts, and convicted him on the third and sixth counts.

Evidence submitted to the jury tended to show that the plaintiff in error appeared before the United States grand jury on February 26, 1926, was sworn by the foreman to tell the truth, and such appearance was in connection with an investigation as to whether there was any liquor served at the party given by him; also, that he appeared before the March, 1926, grand jury, an oath was administered, and that the investigation was as to whether there had been alcoholic liquors supplied by him at the same party. The stenographer took notes of the questions and answers; the notes were transcribed, and received in evidence. The plaintiff in error testified, among other things, that at the suggestion of the property man in his theater a bathtub was placed on the stage at the party on the night of February 22, 1926, as a convenient receptacle to cool ginger ale; that ginger ale was placed in the bathtub and drawn off by the guests by a spigot inserted in the drain of the bathtub. He swore that the ginger ale was the only beverage put in the bathtub, and that he had several drinks from it. He was then asked whether any one bathed in the bathtub, to which he answered "No." He was asked whether stories seen in the newspapers as to this were untrue, and he said they were absolutely unfounded. When asked whether anybody fell into the bathtub, whether anybody was thrown into the bathtub, or whether anybody got into the bathtub voluntarily, he answered "No" to each question. He denied categorically that

there was anybody in the bathtub at all. He was asked whether a Miss Hawley was at the party, and he said he did not know. Before the March grand jury he again denied that there was anybody in the bathtub, either voluntarily or thrown in. He said he was present at all times.

Evidence was offered at the trial which has satisfied the jury that on the early morning of February 23, 1926, at the party and on this occasion, a bathtub which had been standing at the side of the stage was moved to the center of the stage, and that the plaintiff in error came to the center of the stage and stood by the bathtub. A Miss Hawley came from the wings, dressed in a chemise. The plaintiff in error held a cloak in front of her while she slipped from the chemise and got into the bathtub, whereupon the plaintiff in error announced that "the line forms to the right; come up, gentlemen." About 15 or 20 men lined at the side of the bathtub, and as they passed by took glasses and filled them with the contents of the bathtub. Thereupon the bathtub with the girl still in it was pushed back on the stage. There was testimony that the liquor which was put into the bathtub came from a small keg and that it was a beverage. Witnesses testified that they drank glasses of champagne taken from the bathtub. There are various descriptions of the liquid; some that it was brownish and sweet brown wine. One referred to it as a pinkish fluid. Some witnesses called by the defense said it was ginger ale. The jury's verdict exonerated the plaintiff in error from the charge of perjury in reference to the counts which alleged that he served liquor at the party.

[1] Of the errors assigned, five are pressed as requiring a reversal of the judgment. It is argued that the trial court committed error in ruling that as a matter of law the testimony of the plaintiff in error, that no one was in the tub, was material to the investigation before the grand jury with respect to the alleged violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). Section 125 of the United States Criminal Code (Comp. St. § 10295) provides that one "having taken an oath before a competent tribunal * * * in any case in which a law of the United States authorizes an oath to be administered, * * *" and who "willfully and contrary to such oath" states or subscribes "any material matter which he does not believe to be true, is guilty of perjury." The tribunal before which the perjury was committed was the grand jury. This body has powers of investigation and inquisition; the scope of the inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation. Blair v. United States, 250 U. S. 273, 39 S. Ct. 468, 63 L. Ed. 979. When a witness is summoned before that tribunal, he is bound to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry.

[2] The mode of procedure adopted for the proper discharge of the functions of the grand jury is different from that before a petit jury. In the latter, both litigants may, if they will, submit proof subject to the rules of the court on the admissibility of the evidence, and the jury reaches its conclusions after hearing all the testimony. The grand jury investigation does not necessarily cease after it has heard the witnesses brought before it by the United States attorney. Its investigation and full duty is not performed unless and until every clue has been run down and all witnesses searched for and examined in every proper way to find if a crime has been committed, and to charge the proper person with the commission thereof. Its investigation proceeds step by step. A false statement by a witness in any of the steps, though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material, in that it tends to influence or impede the course of the investigation. This materiality has been recognized by the courts. State v. Ruddy, 287 Mo. 52, 228 S. W. 760; State v. Ackerman, 214 Mo. 325, 113 S. W. 1087, 22 L. R. A. (N. S.) 1192; Smith v. State, 153 Ark. 645, 241 S. W. 37; State v. Kellis, 193 Ind. 619, 141 N. E. 337. The test of materiality in a grand jury's investigation is whether the false testimony has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation, and, if it does, an indictment for perjury may be predicated upon it.

The questions addressed to the plaintiff in error were evidently inspired by a widespread publication of newspaper stories of the champagne bath given to a nude woman at a party at the Earl Carroll Theater on the night in question. When summoned, the questions addressed to the plaintiff in error were undoubtedly conceived for the purpose of learning who was there, so that others might be summoned as witnesses. The identification of the woman who stepped

into the bathtub might also serve to produce a witness. A false statement as to the woman tended to mislead the grand jury, and to deprive them of knowledge as to who she was, so that she might not be obtained as a witness. The grand jury has it within its power of investigation to ascertain the names of all possible witnesses.

Counts 3 and 6 of the indictment each allege:

"And it having appeared that at said party and performance a certain bathtub was placed upon the stage of said Earl Carroll Theater, from which certain beverages were furnished to persons attending said party and performance, it became material in said investigation, for the purpose of establishing the nature and character of the beverages in said bathtub, to ascertain whether any one at said party and performance did occupy, enter, or get into said bathtub containing the said beverages."

Clearly one who stepped into the bathtub by smell, sight, or taste, could testify as to whether or not it contained champagne. Thus the materiality of this testimony is made clear by the above quotation from the indictment. Markham v. United States, 160 U. S. 319, 16 S. Ct. 288, 40 L. Ed. 441. It is no answer to say that, because Miss Hawley's name was published in the newspapers, of necessity the grand jury had knowledge sufficient to call her as a witness. The grand jury's duty was to obtain competent legal proof of a violation of the law. The prima facie case does not exist without evidence, competent and admissible in a court of law. It will not be supported by newspaper clippings or mere rumor. Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652. The plaintiff in error's statements were plainly calculated to dissuade the grand jury from further investigation. It would distort the plain meaning of the word "material" to hold otherwise. His statements were deceptive; they were influential, for the accusing finger was directed at him. Had he answered the question truthfully, he would have furnished a clue to the grand jury tending to establish a violation of the National Prohibition Act.

[3] It is argued that, even if the evidence presented some basis for an inference of materiality, it was for the jury, not for the court, to draw that inference of fact. But whether it was any "material" matter was a question of law for the court, and was not for the jury. U. S. v. Singleton (D. C.) 54 F. 488. The rule obtains in the state courts. People ex rel. Hegeman v. Corrigan, 195 N. Y. 1, 87 N. E. 792; People v. Lem You, 97 Cal. 224, 32 P. 11; State v. Greenberg, 92 Conn. 657, 103 A. 897; Wilkinson v. People, 226 Ill. 135, 80 N. E. 699; State v. Brown, 128 Iowa, 24, 102 N. W. 799; State v. Lewis, 10 Kan. 157; People v. Glenn, 294 Ill. 333, 128 N. E. 532.

[4, 5] It is argued that the charge of the District Judge that the jury could not find the plaintiff in error guilty on the third and sixth counts, unless they believed that he gave the testimony that no one was in the tub for the purpose of concealing a violation of the National Prohibition Act, became the law of the case, whether correct or erroneous, and that, the jury having disregarded the charge thus given, the verdict is inconsistent and erroneous. The argument seems to be that, even though the charge thus made upon request of counsel may be erroneous, still it was binding upon the jury. Of course, a jury must be guided by the rules of law as advised by the trial judge. But each count of the indictment is to be considered as a distinct and separate indictment, and the verdict on one count, which is consistent with it, is not invalid because it is apparently inconsistent with the verdict of the jury on another count. We have heretofore announced that we do not hold juries to rules of logic. Steckler v. United States (C. C. A.) 7 F.(2d) 59; Marshallo v. United States (C. C. A.) 298 F. 74. See, also, Gozner v. United States (C. C. A.) 9 F.(2d) 603.

This jury must not have been satisfied that the government had proven its case beyond a reasonable doubt as to the second and fifth counts, and therefore acquitted. But we need not speculate as to this. It cannot mitigate against the jury's finding of guilt on the third and sixth counts. The bathtub had been used as a container of beverage, but the perjury was about the girl who was in the bathtub, which was independent of the beverage contents. The spectacular immersion of Miss Hawley in the tub, standing alone, was inconsistent with the story of the plaintiff in error before the grand jury. Her stepping into the tub with 15 or 20 men passing by drinking from it to her health became a material matter in the investigation whether or not there was a violation of the Volstead law. The grand jury's investigation was to determine whether intoxicating liquors had been possessed or furnished at the party. Plaintiff in error's effort was to conceal such a violation.

[6] It is argued that there is a failure of proof tending to show that the grand jury was duly constituted. Grand juries hold their office under direct authority and supervision of the court. It is an important and notorious office. Federal courts have taken judicial notice of organizations less important. It is the law oftentimes that creates offices and attributes duties and authorities to the incumbents. The incumbents of more important and notorious offices are judicially noticed. As Commissioner of Patents, York v. Winans, 17 How. 31, 15 L. Ed. 27; the incumbency of a court marshal, Givens v. Zerbst, 255 U. S. 11, 41 S. Ct. 227, 65 L. Ed. 475; the office of post office inspector, pursuant to postal regulations, Foster v. United States (C. C. A.) 256 F. 207; the civil proceedings out of which criminal contempt proceedings grew, Schwartz v. United States (C. C. A.) 217 F. 866; proceedings before the United States Commissioner, U. S. v. Casino (D. C.) 286 F. 976; the power of the lawfully constituted officials of the Department of Justice to procure either presentment or ignoramus from the grand jury, Felder v. United States (C. C. A.) 9 F.(2d) 872. It was sufficiently proven that the plaintiff in error appeared before the grand jury and took an oath, and that the grand jury heard his testimony. In the absence of a showing to the contrary, the presumption is that the grand jury was properly selected and drawn according to law. Link v. United States (C. C. A.) 2 F.(2d) 709; U. S. v. Greene (D. C.) 113 F. 683.

[7] Nor was it error for the trial court to refuse permission to counsel for the plaintiff in error to personally examine the talesmen of the jury on voir dire. Rule 9 of the Common-Law Rules of the District Court for the Southern District of New York provides that the judge alone shall examine all jurors on the voir dire, and it applies to criminal cases. It is in no way limited, but applies to criminal cases, as well as common-law cases. This practice was recommended to the federal trial judges by the conference composed of the Chief Justice and the senior Circuit Judges sitting in judicial council, and has resulted in the formulation of the rule referred to, in the Southern district of New York. It has been approved in other circuits. Murphy v. United States, 7 F.(2d) 85 (First Circuit); Kurczak v. United States, 14 F.(2d) 109 (Sixth Circuit).

[8] We find, upon examination of the record, that the evidence was sufficient to require that it be submitted to the jury, and that no errors were committed below which require a reversal of the judgment of conviction.

Judgment affirmed.