**UNITED STATES of America,**

v.

**R. Lawrence SIEGEL and Hadassah R. Shapiro.**

United States District Court
S. D. New York.
May 27, 1957.

## 372

Paul W. Williams, U. S. Atty., for the Southern District of New York, for the United States, Thomas A. Bolan, Asst. U. S. Atty., New York City, of counsel.

Barent Ten Eyck, New York City, for R. Lawrence Siegel and Hadassah R. Shapiro, New York City.

BRYAN, District Judge.

Defendants move, pursuant to Rule 12(b) (2), Fed.Rules CrimProc., 18 U.S. C.A., to dismiss all twelve counts of the indictment against them on the grounds that each fails to state an offense.

The indictment arises out of an investigation by a grand jury in this district to discover whether (a) one Harvey Matusow had testified falsely in either or both of two unrelated trials in which he was a witness for the prosecution, or (b) whether Matusow had committed perjury in executing affidavits recanting his testimony in these two trials, and (c) whether there had been a conspiracy to influence Matusow to commit perjury by executing these affidavits.

Both defendants are charged in the indictment with conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 1503 by corruptly influencing, obstructing and impeding, and endeavoring to influence, obstruct and impede the due administration of justice in the course of these grand jury proceedings (Count I), and with five substantive acts alleged to constitute violations of Section 1503 (Counts II to VI, inc.). Counts VII, VIII, IX and X charge defendant Siegel with perjury before the grand jury in the same proceeding in violation of 18 U.S.C. § 1621. Defendant Shapiro is similarly charged with perjury before the grand jury in Counts XI and XII.

I will first consider the defendants' objections to the obstruction of justice and conspiracy counts and will then deal with their objections to the perjury counts.

### Counts I to VI

According to the allegations of the indictment defendant Siegel is a lawyer, who had met with Harvey Matusow on at least six occasions when the subject of Matusow's testimony as a prosecution witness had been discussed. The substance of what occurred at these meetings had been recorded in dictated notes and in memoranda typed therefrom about the time the discussions had taken place. Certain of these notes had been dictated to one Mary Manna, named as a co-conspirator in Count I but not charged as a defendant, and others had been dictated to and typed by the defendant Shapiro.

Count II charges that defendants, knowing that Mary Manna was to be a witness before the grand jury in the investigation, influenced and endeavored to influence her to destroy notes dictated to her relating to Siegel's meetings with Matusow on this subject, to create substitute notes in their place, and to give false testimony to the grand jury concerning the time when a memorandum relating to the meeting was typed and when the notes from which it was written were dictated to her.

Counts III, V and VI charge that defendants, knowing that a grand jury sub-

poena had been served on Siegel's law firm requiring the production of all documents relating to Matusow, and that the grand jury had specifically requested Siegel to produce any memoranda he had made concerning his meetings with Matusow, destroyed memoranda relating to these meetings and notes dictated of them, and created substitute notes and memoranda in place of those destroyed for the purpose of passing the substitutes off before the grand jury as the original memoranda, which Siegel eventually did.

Count IV charges that defendants, knowing that the grand jury had requested the production of the stenographic notes of any memoranda regarding the Matusow discussions, removed from Mary Manna's stenographic notebook the notes which had been dictated to her and from which she had typed a memorandum concerning the discussions, destroyed the notes and caused her to create new notes in her notebook for the purpose of passing them off to the grand jury as the notes originally dictated to and written up by her, and that defendant Shapiro thereafter so passed them off to the grand jury.

Each of Counts II through VI alleges that defendants knew that the grand jury was conducting this investigation as to the alleged false testimony of Matusow, his alleged recantation of that testimony, and the alleged conspiracy in the latter connection. They further allege that defendants, by committing the acts specified "unlawfully, wilfully and knowingly did corruptly influence, obstruct and impede, and corruptly endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for the Southern District of New York, * * *."

Count I charges a conspiracy between the defendants and Mary Manna corruptly to influence, obstruct and impede the administration of justice and to endeavor to do so, and alleges, among the overt acts in furtherance of the conspiracy, the various specific violations of Section 1503 charged in Counts II to VI.

The defendants attack the sufficiency of these counts on several related grounds.

They first assert that the failure to allege in specific terms that the documents, notes or papers with which defendants' acts were concerned were "material" to the grand jury investigation makes these counts fairly defective.

█ Section 1503 under which the five substantive counts are laid deals with interference with or obstruction of the due administration of justice and endeavors so to do. The first portion of the section is for the protection of witnesses, jurors and court officers. It condemns those who corruptly or by threats or force endeavor to influence, intimidate, impede or injure such persons. The latter portion of the statute deals generally with the obstruction of justice. It condemns the corrupt influencing, obstructing or impeding of the due administration of justice and corruptly endeavoring to do so. Success is not the criterion of the statute though it may aggravate the offense. Thomas v. United States, 8 Cir., 15 F.2d 958; Bedell v. United States, 8 Cir., 78 F.2d 358, certiorari denied 296 U.S. 628, 56 S.Ct. 151, 80 L.Ed. 447. The statute condemns "any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553; Broadbent v. United States, 10 Cir., 149 F.2d 580, 581.

█ The indictment follows the specific language of Section 1503 and also spells out in detail the specific acts with which defendants are charged. It is fully adequate under Federal Rules of Criminal Procedure, rule 7(c) to inform defendants of the essential facts constituting the offenses with which they are charged by any standards. United States v. Achtner, 2 Cir., 144 F.2d 49, 51; United States v. Silver, 2 Cir., 235 F.2d 375; United States v. Debrow, 346 U.S. 374, 377, 74 S.Ct. 113, 98 L.Ed. 92.

At no point does Section 1503 use the word "material" in its context, nor does it anywhere say that the acts condemned

must be in relation to a matter "material" to an action or proceeding. Section 1503 is quite different in this respect from the perjury statute, 18 U.S.C. § 1621, which specifically provides that the perjury must be in relation to "material matter". If there be a statutory analogy it is to the second clause of Section 1001 which makes it a crime to make false statements or representations in matters within the jurisdiction of any department or agency of the United States, and, in contrast to the first clause of that section does not require that such statements or representations be with respect to a "material" fact. In United States v. Silver, supra, the Court of Appeals of this Circuit recently held that an indictment laid under the second clause of Section 1001 was not required to allege that the false statements charged related to a material fact since the clause contains no such language. See, also, United States v. Lange, D.C.S.D.N.Y., 128 F.Supp. 797. The reasoning of the Silver case applies here as well. It is plain that it is unnecessary for the indictment in the case at bar to allege in so many words that the matters here involved were "material" to the grand jury investigation when the statute contains no such language.

However, defendants rest their argument upon a broader footing. They argue that the charge of influencing, impeding or obstructing justice can be sustained only if it is in fact related to a matter or matters material to the inquiry. They refer to the allegations which spell out the details of the acts charged and assert not only that such materiality is not affirmatively shown by the allegations of the indictment, but that it is negatived by those allegations. They therefore argue that this indictment does not charge a crime under Section 1503 or a conspiracy to commit a crime under that section.

Defendants seem to consider "materiality" as a catalytic agent necessary to the validity of the indictment. However, the word "material" has little significance if used in the abstract and acquires significant meaning only if applied to a specific situation before the court, in this case an inquiry by the grand jury into specific matters plainly within its jurisdiction which are alleged in the indictment.

The test of materiality in a grand jury investigation under the perjury statute is whether the false testimony has "a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation * * *." Carroll v. United States, 2 Cir., 16 F.2d 951, 953, certiorari denied 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; United States v. Hirsch, 2 Cir., 136 F.2d 976.

Even assuming that the same test of materiality applies here it would seem that the allegations of the indictment would clearly pass the test. For the acts of defendants in destroying notes and memoranda and creating substitutes for the purpose of submission to the grand jury surely had a natural tendency to impede the grand jury investigation if not to influence it.

But I believe that the requirements under the obstruction of justice statute should be put somewhat differently. Clearly the matters with which the acts or endeavors to influence, obstruct or impede justice in a grand jury inquiry are concerned must bear a reasonable relationship to the subject of that inquiry. If such matters bear no reasonable relation to the inquiry or its subject matter the acts may not constitute an obstruction of justice or an endeavor to do so. If they do bear such a relationship then they constitute a violation of the statute. Whether in such case matters so related to the inquiry be labelled as material or as relevant or merely as having a reasonable relation to the subject matter is of little consequence and seems to me to be largely an exercise in semantics.

It is alleged in this indictment that the grand jury, having under investigation various conflicting allegations of perjury against Matusow, and a conspiracy in that connection, sought to obtain memoranda and notes concerning

discussions between Matusow and defendant Siegel relating to Matusow's allegedly perjured testimony. If these notes and memoranda do not bear a reasonable relationship to the subject matter of this grand jury's inquiry I do not know what does. These are matters plainly relevant to the inquiry. Whether they will ultimately turn out to be material in the sense that they form part of the basis for grand jury action, or whether the grand jury chooses to regard them as immaterial in that sense is beside the point. The question of such "materiality" is not for determination at the stage of the grand jury proceedings with which we are concerned here, much less for determination by these defendants themselves.

As Chief Justice Marshall remarked in United States v. Burr, 25 Fed.Cas. page 55, 68, No. 14,693 in passing on whether a paper which the grand jury had requested should be delivered to it,— "a paper to go before the grand or petit jury must be relevant to the case, even if its materiality were not proved—." After further discussion the Chief Justice "then remarked that as the letter was wanted by the grand jury, a witness having referred to it, that was sufficient to establish its relevancy, and directed it to be delivered to them." This is similar to what is alleged to have happened here.

The grand jury knew that these notes and memoranda concerned the very subject they were investigating and desired to see them. All this was known to defendants.

Thus, the matters concerning which these defendants acted or endeavored to act plainly bear a reasonable relationship to the subject matter of the grand jury's inquiry, or to put it another way, are relevant to the inquiry. This being so, the defendants at least endeavored to influence, obstruct and impede the administration of justice, if they did not actually do so, by destroying the evidence on these matters, creating other evidence in its place and influencing a witness to give false testimony concerning it. Any other view would hamstring grand jury

proceedings on the one hand and emasculate the statute condemning obstruction of justice and endeavors to obstruct justice on the other.

I see nothing to the contrary in the three cases which, defendants say, establish the proposition that the allegation of materiality is essential to an indictment under this section. Wilder v. United States, 4 Cir., 143 F. 433; Bosselman v. United States, 2 Cir., 239 F. 82; and United States v. Solow, D.C.S. D.N.Y., 138 F.Supp. 812, 813. It is true that in each of these cases the indictment specifically alleged that the matters concerning which the acts charged were committed were "material" or "material and relevant" to the judicial proceeding concerned. But the point which the defendants raise here was not passed on in any of these cases. Nor do they hold that the indictment would be insufficient if, as here, absent the word "material", its allegations showed that in fact the matters concerning which the acts charged were committed bore a reasonable relationship to the subject matter of a grand jury inquiry.

The Solow case arose out of this same grand jury investigation of Matusow's alleged perjury. It was alleged that the accused had destroyed certain letters relating to conversations with Matusow concerning his testimony after these papers had been subpoenaed by the grand jury, and that, knowing of such investigation, and of an order for the production of the documents, the accused knowingly, wilfully and corruptly destroyed them to prevent their production before the grand jury. The indictment in that case specifically alleged that the correspondence was material and relevant to the matters which the grand jury was investigating. But there is no reason to suppose that the absence of these words would have rendered it insufficient when it was apparent from the allegations that the correspondence plainly bore a reasonable relationship to the matter under grand jury investigation. The point in the Solow case was quite different from that raised here. The

statement of the court that "a fair reading of the indictment shows that it contains the essential elements of the crime charged" can scarcely be construed as a holding that the allegation of materiality and relevancy in so many words was essential to the sufficiency of the indictment under the circumstances.

■ The defendants also assert that the indictment must allege that they knew, or reasonably should have known, that the documents and notes which they destroyed were "material" to the grand jury's inquiry, and that accordingly the present indictment is fatally defective because it contains no such allegations. There is no merit to this contention.

■ It is alleged in the indictment that the defendants knew that the grand jury was conducting this very investigation and that the grand jury had subpoenaed or requested these very documents. No doubt it is necessary to allege that the defendants knew that there was some inquiry in which these papers might be required or that the grand jury had requested them, or perhaps both. However, such knowledge is amply and fully spelled out in this indictment by the allegations just mentioned, which are also quite sufficient to show that the defendants knew that these documents bore some reasonable relationship to the subject of the grand jury inquiry if that also were required. Once the defendants knew these things their duty was clear and they had no right to tamper with or destroy these papers. It was for the grand jury and not for the defendants to decide whether they were "material" to the inquiry in the limited and restricted sense in which defendants seek to apply that term. Cf. Brown v. United States, 276 U.S. 134, 145, 48 S.Ct. 288, 72 L.Ed. 500; Commonwealth v. Southern Express Co., 160 Ky. 1, 3, 169 S.W. 517, L.R.A.1915B, 913.

Defendants make a further argument. They point out that there is no allegation in the indictment that any of the substitute notes and memoranda "created" by defendants in place of those destroyed, were in fact any different in substance from the originals. They therefore claim that the destruction of the originals and the manufacture of the substitutes could have made no difference to the grand jury's investigation in any event. They thus conclude that under no circumstances could they be guilty either of obstructing or impeding the administration of justice or of endeavoring to do so since justice could not have been obstructed or impeded in any manner by what they did.

The grand jury in the performance of its duties is not required to accept the word of a witness that substituted documents contain the substance of the originals or even that they are exact copies. It is entitled to insist upon the production of originals if such are available. Nor does a grand jury have to accept the testimony of a witness, in this case Siegel or Shapiro, that the documents were the same as the originals. "Its investigation and full duty is not performed unless and until every clue has been run down and all witnesses searched for and examined in every proper way to find if a crime has been committed * * *." Carroll v. United States, supra, 16 F.2d at page 953.

The original memoranda and notes which summarized the discussions between the defendant Siegel and Matusow were not only proper subjects of the grand jury investigation but the grand jury had the right and, in fact, the duty to obtain and examine them. They could be clearly helpful to the grand jury in determining whether the oral testimony given by defendant Siegel was true or false and might also lead to other avenues of inquiry which might aid the investigation.

Moreover, the indictment charges defendants with wilfully, knowingly and corruptly destroying the originals and corruptly creating substitutes. It is difficult to see how such allegations can be construed to mean anything other than that the destruction of the original documents and the creation of the substitutes was in an endeavor "to do or accomplish the evil purpose that the section was en-

acted to prevent." United States v. Russell, supra [255 U.S. 138, 41 S.Ct. 261].

Only one further objection, limited to Counts III, IV, V and VI, need be considered. Defendants contend that these four counts charge only that the defendants failed to perform their own obligations as witnesses before the grand jury and that therefore if they committed any crime it was punishable only as perjury or contempt.[1]

 Assuming that the allegations of these four counts would sufficiently spell out a charge of perjury or contempt (but cf. as to contempt In re Gottman, 2 Cir., 118 F.2d 425) that does not preclude them from being valid counts charging violation of Section 1503. The same transactions or acts may constitute a violation of two different statutes and a defendant may be tried for violating either or both provided the offense defined in one embraces an element or elements not included in the other. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Catrino v. United States, 10 Cir., 176 F.2d 884; United States v. Miro, 2 Cir., 60 F.2d 58. The acts and endeavors to obstruct and impede the administration of justice which are charged in this indictment include the suppression or destruction of memoranda and documents and the manufacture of other documents for purposes of passing them off to the grand jury as the originals, none of which took place in court or before the grand jury. These are not elements of the crimes of perjury or contempt which relate to the conduct of a witness on the stand. There is no reason why the defendants cannot be tried for these acts under the obstruction of justice statute.

Defendants' objections to the sufficiency of Counts I through VI of the indictment are therefore overruled.

### Counts VII to XII

These counts variously charge one or the other of defendants with testifying falsely under oath before the grand jury with regard to the existence, availability, authenticity, dictation and typing of the notes and memoranda which summarized the discussions between defendant Siegel and Matusow as to Matusow's allegedly perjured testimony. After alleging the facts as to the grand jury investigation and that the testimony was with respect to matter "material to this investigation," the indictment sets forth the specific testimony alleged to be false and known to be false by the defendants.

The sufficiency of each of these counts is attacked upon the ground that it appears from the face of the indictment that the alleged false testimony could not have been material to the grand jury investigation.

 An essential element of the crime of perjury under 18 U.S.C. § 1621 is that the false testimony be as to a "material matter". A general allegation of materiality such as is made in this indictment will suffice unless the other allegations in the indictment clearly show that the false statements could not have been material. Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L. Ed. 441; United States v. Hirsch, supra; Woolley v. United States, 9 Cir., 97 F.2d 258. Defendant must then stand trial though, of course, in order to obtain a conviction the Government must prove at the trial that the false statements were with respect to material matter. United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847.

 Defendants contend that the allegations of this indictment affirmatively show that the allegedly false testimony could not have been material to the grand jury investigation. Their somewhat tortuous reasoning is in substance this— The grand jury was seeking to ascertain what testimony given by Matusow was false and what testimony was true. Therefore the only matter material to its inquiry was the substance of the mem-

---

[1]. The defendants' analysis of these four counts is by no means correct since Count IV includes the specific allegation that defendant Siegel did "corruptly cause the said Mary Manna to create certain notes and insert them in said stenographic notebook * * *."

oranda and notes which purported to record the substance of the discussions between defendant Siegel and Matusow regarding such testimony. The grand jury obtained the substance of these discussions through the oral testimony of Siegel and also from the substitute memoranda and notes themselves since there is no allegation that they differed from the originals. Therefore the facts as to when and under what circumstances any individual memoranda or notes were made was not material to the inquiry. Since the allegedly false testimony of these defendants relates only to such facts and not to the substance of the notes and memoranda it is not material to the investigation.

I have referred to the test of materiality in a prosecution for perjury committed before a grand jury as laid down in Carroll v. United States, supra, and United States v. Hirsch, supra. The test is whether the false testimony has a natural effect or tendency to influence or impede the grand jury in its investigation or to dissuade it from pursuing the investigation. As stated in the Carroll case (16 F.2d at page 953):

> "Its [the grand jury's] investigation proceeds step by step. A false statement by a witness in any of the steps, though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material, in that it tends to influence or impede the course of the investigation."

The grand jury clearly had the right to obtain the original notes and memoranda which were necessary for the accomplishment of a full and thorough investigation. At the very least such memoranda and notes might be used by the grand jury to corroborate or impeach the defendant Siegel's oral testimony with respect to these discussions. Even for that limited purpose, though collateral to the main issue under investigation, they were material to the investigation. Blackmon v. United States, 5 Cir., 108 F. 2d 572, 573.

Since the original memoranda and notes were material to the grand jury investigation, questions and answers with regard to their existence, location, authenticity and date and manner of preparation were also material. Inquiries of this nature are essential steps in the course of a grand jury investigation. Such investigations would rarely be successful unless the grand jury had the power to insist upon truthful answers to questions intended to discover where evidence could be found or tending to impeach or corroborate other testimony given before it. Witnesses testifying falsely with respect to such collateral matters are as guilty of perjury as those who testify falsely with respect to the main issues before the grand jury.

Carroll v. United States, supra, involved a question similar to that presented here. It was alleged that Earl Carroll had testified falsely before a grand jury investigating a violation of the Prohibition Act, 27 U.S.C.A. § 1 et seq. The Government claimed that Carroll had held a party at the Earl Carroll Theatre, features of which were a bathtub containing a beverage variously described as champagne and ginger ale and a lady in a state of complete undress climbing into the tub and sitting there while the guests imbibed. Carroll was asked before the grand jury whether the lady had entered the bathtub, or had been in the tub at all, and he denied that she ever had been. The indictment charged that this answer constituted perjury.

The Court of Appeals of this Circuit rejected defendant's contention to the effect that this false testimony was not material because the grand jury was investigating the nature of the beverage in the bathtub and not the presence or nudity of its occupant and because, in any event, it appeared that the name of the lady was already known to the grand jury through the press. The Court stated (16 F.2d 954):

> "Clearly one who stepped into the bathtub by smell, sight, or taste, could testify as to whether or not it

contained champagne. Thus the materiality of this testimony is made clear * * *. It is no answer to say that, because Miss Hawley's name was published in the newspapers, of necessity the grand jury had knowledge sufficient to call her as a witness. The grand jury's duty was to obtain competent legal proof of a violation of the law. * * * The plaintiff in error's statements were plainly calculated to dissuade the grand jury from further investigation. It would distort the plain meaning of the word 'material' to hold otherwise. * * * Had he answered the question truthfully, he would have furnished a clue to the grand jury tending to establish a violation of the National Prohibition Act."

It was just as material in the instant case for the grand jury to attempt to locate the authentic original documents concerning the Siegel—Matusow discussions as it was for the grand jury in the Carroll case to locate the lady in the bathtub. The documents would certainly have been of aid to the grand jury in determining whether or not Matusow had committed perjury, and, if so, on what occasions, and might have led to other clues tending to establish the commission of crimes on Matusow's part. Any details concerning the origin of the documents were therefore material, and if it be established that defendants testified falsely with respect to these matters they plainly could be found guilty of perjury.

There is no merit in the defendants' contention that the allegations in the first count of the indictment (the conspiracy count) necessarily negative such materiality. If these allegations be considered in conjunction with those of the counts now under discussion, they serve to strengthen the counts on the materiality question rather than otherwise.

Nor does the case of Hogue v. United States, 5 Cir., 184 F. 245, which defendants stress, support their position. There an indictment for perjury was dismissed as insufficient because its description of the allegedly false testimony was so inadequate and confusing as to make it impossible to ascertain what false statements defendant was charged with making. The case does not pass on the question of materiality at all. Any confusion as to the grounds of the decision which might have been created by phrases used by the court in its original opinion were cleared up in its opinion on reargument at page 251, where the court stated that "The defect found in the indictment is not in the manner in which the materiality of the evidence is alleged. The defect is that the indictment does not state the alleged false testimony of the defendant." Of course such an indictment is insufficient to charge perjury.

In contrast the indictment in the case at bar alleges in *haec verba* the testimony of the defendants which is claimed to have been false, and alleges that the defendants knew it to be false. It also alleges in so many words that the testimony was material to the grand jury investigation and the facts alleged show that it was material. The perjury counts of the indictment are fully sufficient.

Defendants' motion to dismiss the indictment is in all respects denied.